Houston & Texas Central Railroad Company v. M. A. Dunn.

Delivered June 17, 1897.

**Negligence—Dangerous Highway—Choice of Routes.**

One was not guilty of contributory negligence in choosing a way over a foot bridge only three feet wide without railings, although he could have taken another way which would have been perfectly safe, if the danger from using the bridge was not such as would deter a person or ordinary prudence.

Appeal from Waller. Tried below before Hon. T. S. Reese.

*Baker, Botts, Baker & Lovett* and *Frank Andrews,* for appellant.

*Meek & Taylor,* for appellee.

PLEASANTS, Associate Justice.—The appellee sued appellant to recover damages for injuries to his wife which he charged were proximately caused by the negligence of appellant in not properly constructing

and maintaining a reasonably safe bridge across a ditch cut by appellant in Houston Avenue, in the city of Houston, at a point of intersection of said street with the appellant's road or right of way.

The defendant answered by general and special demurrers, and by general denial, and by plea of contributory negligence, the answer specially averring that the plaintiff was under no necessity to cross the bridge alleged to have been unsafe, and that he might have taken his wife to their boarding-house by another route, which was entirely safe.

The plaintiff, until some ten days previous to the injuries received by his wife, had, with her, resided for many years in Hartley County, Texas. On or about the 9th day of December, 1895, he came to Houston and opened a store in that city, his place of business being on the east side of Houston Avenue and north of the roadbed of appellant. His lodgings were at the Ferguson House, situate on the west side of said avenue and south of the railroad track. On the morning of the 17th of December, 1895, plaintiff's wife arrived in Houston from Hartley, and she was met at the Central depot by plaintiff, about the hour of 5:35 o'clock a. m. The morning was dark and the weather was threatening, and at the depot the two took a hack and drove to a point on the east side of Houston Avenue, nearly opposite to the Ferguson House, where they left the hack and proceeded on foot to said house. When they left the hack, and walked a few steps north, till they reached the appellant's roadbed, which here crosses Houston Avenue, they went along the embankment, upon which the railway track is laid, until they reached a point at which the track intersects the sidewalk on the western side of Houston Avenue, at which point they turned south, and in attempting to cross the foot bridge which spans a ditch running across Houston Avenue, along the south side of said embankment, Mrs. Dunn fell into the ditch, and by the fall was injured in her side and arm, and, according to her statement, in other portions of her body. She was assisted from the ditch by her husband and a stranger who happened to be near by, and she proceeded to the Ferguson House, which was not many yards distant. The distance from the top of the bridge from which she fell to the bottom of the ditch was from three to four feet.

The appellant's roadbed, where it crosses Houston Avenue, is some five or six feet above the surface of the street, and the bank of the ditch next to the railway track is considerably higher than the opposite bank. The bridge was constructed of three planks, each one foot in width and twenty feet in length, laid lengthwise across the ditch, without siderails or banisters, and with the southern end much lower than the northern end. The evidence as to the declination of the bridge from north to south is conflicting, the testimony of plaintiff's witness Batte making it about one foot in four, or five feet in twenty; while the witness Goodrich, who testified for defendant, estimated the slant or declination for the entire length of the bridge to be only one foot and four-tenths. The plaintiff was familiar with the bridge, having crossed it several times each day from his arrival in Houston until the day on which his wife was injured,

the way by which he took his wife, after leaving the hack, along the roadbed of the railway, being the same he had been accustomed to travel between his place of business and his lodging place; and his reason, as he testified, for going by this route was the condition of the street in front of and near to the Ferguson House. The evidence on this point is conflicting. There is testimony, however, sustaining the contention of the appellee that there had been much rain in Houston during the month of December, 1895, and that the streets were muddy, and that there was much water on the ground in the vicinity of the Ferguson House on the morning of the 17th of December. In the center of Houston Avenue the street railway is located. The width of this avenue from the street railway to the sidewalk, in front of the Ferguson House, is about $32\frac{1}{2}$ feet, and the track of this railway is some two feet or more higher than the surface of the street adjoining the sidewalk, and the sidewalk is about one foot higher than the adjacent surface of the street, and in this ditch or gutter formed by the sidewalk and the sloping surface of the street there is evidence that the water, on the 17th of December, was from seven to fifteen inches deep in front of the Ferguson House, and that the sidewalk, in front of and near that house, was in some places overflowed by water from this gutter or ditch; and, on the other hand, there is evidence that there had been little or no rain during the month of December, previous to the morning of the 17th, and that the streets were at that time not muddy, and that there was no water in the gutter on the west side of Houston Avenue, or on the sidewalk, except at a point some distance south of the Ferguson House, where water flowed from a hydrant or pump situated on an adjoining lot, and that, between the bridge from which Mrs. Dunn fell and the Ferguson House, there were one or two bridges across the ditch or gutter adjacent to the sidewalk, which could have been crossed with safety, and that there was nothing to prevent the appellee and his wife from alighting from a carriage on the sidewalk in front of the Ferguson House.

The evidence shows that Mrs. Dunn was a large woman, weighing about 180 pounds at the time she was injured, and the appellee was in advance of her, holding her by the hand, when she fell from the bridge, the bridge, according to his testimony, being too narrow to admit of his walking by her side. The evidence is also conflicting as to the extent and probable duration of Mrs. Dunn's injuries; and also as to what was the state of her health at and previous to the time of her fall. Dr. Stuart, who paid her a professional visit on the 17th of December, shortly after she was injured, found her suffering from fever, with a contusion on her right leg and right arm, but did not think the fever was the result of the contusions. He considered her injuries not serious. She complained of pain from the bruises on her arm and leg, and he gave her a liniment with directions to apply it to the injured limbs. He also testified that he was informed by Mrs. Dunn that she had been sick just before leaving Hartley for Houston. This physician saw her only once. He afterwards

prescribed for her, but did not visit her after the morning of the 17th of December. Mrs. Ferguson, at whose house Mrs. Dunn remained until some time in January, 1896, testified that Mrs. Dunn, when she reached her house, said, in answer to a question put to her by appellee, that she was not hurt, but she was wet, the ditch into which she fell having water in it to the depth of several inches. This witness further testified that Mrs. Dunn continued to go up and down between the first and second stories of the house for several days after the 17th of December, 1895, and that she never discovered, while she remained at the Ferguson House, that she was unable to use her arm; but one or two of the servants of the house testified that a day or two after she came to the house to board she was unable to use her knife and fork at the table, and her food had to be cut for her. There was also evidence to the effect that she was deaf on the 18th of December, and was still so at the time of the trial, and that she was sick during her entire stay at the Ferguson House, and required the attention of a nurse while there, and afterwards for some time. She was confined to her bed for about four months, that is, she was in bed most of the time during these four months; and, at the time of the trial, though improved in health, she was still suffering and complaining of her arm, her womb, her spine, and her bowels. Previous to her fall, the evidence, on the part of appellee, is to the effect that Mrs. Dunn was a hale and hearty woman for one of her age, 55 years. Her husband testified that she had not been sick for seventeen or eighteen years prior to her fall from the bridge; that she had been accustomed to do all of their housework, and did not require any help, but since then she had been unable to do anything in the way of work, and was on the bed about two or three days of each week. Dr. Olive, who was called to see her on the 12th or 13th of January, 1896, found her suffering from cholera morbus, and intense rheumatism of the right side, especially the right shoulder and arm. He found her right arm smaller than the left, and the shoulder joint and the elbow joint were stiff. She was nervous and hysterical, and complained of uterine trouble. Before this witness saw Mrs. Dunn, she had been visited by Dr. Olive, Jr., whose patient she was. Again, on the 5th of May, this witness visited her, and found her condition in some respects improved, and in others not. The right arm was smaller than it was in March; she was much emaciated; was still nervous and hysterical, and was suffering from spinal irritation from the spinal affliction. In the opinion of this witness, she would not be likely to recover, if the irritation was caused from an injury, though it was possible she might do so; but the injury to her side and arm he was confident was permanent. She would ever be subject to traumatic rheumatism. On the last visit of this witness, May 5th, to Mrs. Dunn, he made a thorough examination of her; and he stated that she was certainly injured in her arm and side, the injury to the side extending to the pelvic bone. These injuries might result from various causes. It was very probable that they might be caused by a fall of three or four feet.

The petition charged that the ordinance of the city of Houston required

the appellant to keep an arc light over the bridge from which Mrs. Dunn fell, but while the evidence is there was no light near this bridge at the time of the accident, the evidence, on the part of the appellant, is uncontradicted that the appellant had a contract with the electric light company of the city to maintain such a light as the ordinance required, and but a few minutes before the appellee and his wife arrived at the bridge the required light was observed by the witness Ferguson.

Upon the evidence above recited the jury returned a verdict for the plaintiff for $2000, and judgment was rendered in accordance therewith, and, a new trial being overruled, defendant appealed to this court.

We have duly considered the case with the aid of the elaborate brief of the appellant, and our conclusion is that the judgment must be affirmed. We can discover no reversible error in the charge of the court, nor do we think the court erred in refusing the third and seventh instructions requested by the appellant; but, on the contrary, we think these requested charges were erroneous, and that the charge of the court, taken in connection with the seven charges given at the request of the defendant, contained all of the requisites prescribed in article 1317 of the Revised Statutes.

While the evidence is conflicting, and while the testimony of the appellee may be justly subject to the criticism of counsel for appellant, since the jury gave credit to this testimony, our conclusion is that there was ample evidence to warrant the jury in finding that the appellant was guilty of negligence in respect to the construction of the bridge from which appellee's wife fell, and that neither the appellee nor his wife was guilty of contributory negligence. This bridge was located in a populous and business portion of the city, and was in width about one-fifth of that of the sidewalk, and was without railing or banisters, and one end considerably higher than the other.

The issue of contributory negligence could not be established by proving that there was another way from the depot to the Ferguson House than the one taken by appellee, which was perfectly safe. But that issue must be determined, by a solution of the inquiry, was or was not the attempt by appellee to cross the bridge, with full knowledge by him of its character, an act which one of ordinary prudence would have done under like circumstances? That the appellee might have driven a carriage immediately in front of Ferguson's house, and alighted therefrom with his wife without the least difficulty, and might have gone thence to the house, without going through either water or mud, may be entirely true, and still the appellee would not necessarily be guilty of contributory negligence. One way might be entirely safe, and the other might not be so; but yet the latter route might be chosen by appellee without incurring the reproach of negligence, if the danger was not such as would deter a man of ordinary prudence. The court did not err in refusing a new trial.

The issues in the cause were properly submitted for their decision to the jury, and we do not see how we can disturb the verdict without invading the province of the jury. The credibility of the witnesses was a ques-

tion for the jury, and giving credit to the witnesses for appellee, as we must do, we can reach no other conclusion than that the verdict is sustained by ample evidence, and that there is nothing whatever in the case showing the damages assessed to be excessive.

The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

October 21, 1897.

PLEASANTS, ASSOCIATE JUSTICE.—This motion is refused, but we correct our finding of fact complained of by appellant under the twelfth assignment of its motion. We do not find that there was water on the sidewalk immediately in front of Ferguson's house, but that there was water upon the sidewalk south of and in the vicinity of Ferguson's house.

*Rehearing denied.*

Writ of error refused.